SALVATORE MONTANO, Appellant, v. SPRINGFIELD GARDENS NATIONAL BANK, Respondent.

Supreme Court, Appellate Term, Second Department, April 22, 1955.

*George Sprung, Milton E. Jacobowitz* and *Daniel Weiss* for appellant.

*Gerald T. Grady* for respondent.

HART, J. On July 29, 1952, plaintiff opened a "Check Master" account with defendant bank. On the signature card signed by him at that time appears the following : "This account is subject to the rules governing Check Master accounts printed in the passbook, the Depositor's Agreement or the Deposit Balance Form one of which has been delivered to and accepted by the Depositor to which rules and conditions the Depositor agrees by the delivery hereof to the bank."

At the time the account was opened a passbook headed " Rules governing Check Master accounts " was delivered to plaintiff. There was, however, no proof at the trial that copies of the " Depositor's Agreement " or the " Deposit Balance Form " were delivered to him or the substance thereof called to his attention. Under the type of account opened by plaintiff the deposit balance form or statement of account is rendered quarter-annually by the bank. At the foot thereof, along with other printed matter, appears the phraseology: " This bank will not be responsible for payment of postdated checks * * * and the depositor agrees to hold this bank harmless in relation thereto." A scanning of the sample passbook in evidence discloses that there is no such disclaimer of responsibility for payment of postdated checks therein.

On or about April 9, 1954, plaintiff issued two postdated checks to one I. Shapiro drawn on defendant bank in the amounts of $200 and $300, respectively. The latter check, though dated April 16, 1954, was deposited by the payee on April 9, 1954, and paid by defendant on April 12, 1954. Defendant conceded that plaintiff called in person on April 13, 1954, for the purpose of stopping payment and was told that payment of the check could not be stopped in advance of its due date and, as a matter of fact, that payment on the check had been made the previous day.

The gravamen of plaintiff's action is the breach of the contract " of agency " in honoring the postdated check before its maturity date and for negligence in making payment thereon. From a judgment in defendant's favor plaintiff appeals.

The common-law rule of liability of a bank in paying prematurely a postdated check is succinctly set forth in *Corpus Juris Secundum* (Vol. 9, p. 696, § 345): " A postdated check is payable on or at any time after the day of its date, being in effect the same as if it had not been issued until that date; the bank ought not to pay it, if presented earlier, and if it does the depositor can recover his money." (See, also, Morse on Banks and Banking [5th ed.], Vol. 1, p. 698, § 389, subd. (a) ; *Godin* v. *Bank of Commonwealth,* 6 Duer 76; *Dousmanis* v. *Colonial Bank,* 134 Misc. 472, affd. 228 App. Div. 809.)

A bank's common-law liability may be limited where the limitation " has the assent of the depositor." (*Gaita* v. *Windsor Bank,* 251 N. Y. 152, 155.) Defendant contends that such an agreement limiting its liability was entered into herein as evidenced by the " rule " printed at the foot of the statement of account mailed quarterly to plaintiff to the effect that it " will not be responsible for payment of postdated checks ".

As previously noted, there is no proof that such a sample statement was delivered to the plaintiff at the time he signed the signature card. The latter instrument, which defendant claims is the basic contract between the parties, purports to incorporate by reference the " rules " of the bank. There was no proof whatever that the substance of the language appearing at the foot of the bank statement was ever called to plaintiff's attention or observed by and acquiesced in by him. Under these circumstances it does not appear that the minds of the parties met so as to provide for a limitation of the liability imposed on defendant by the common law. (Cf. *Matter of Philip Export Corp.* [*Leathertone*], 275 App. Div. 102 ; *Matter of General Silk Importing Co.* [*Gerseta Corp.*], 198 App. Div. 16 ; *Matter of Tanenbaum Textile Co.* v. *Schlanger,* 287 N. Y. 400, 404, and *Klar* v. *H. & M. Parcel Room,* 270 App. Div. 538, affd. 296 N. Y. 1044.)

Moreover, the " rule " itself is not sufficiently broad to relieve defendant from the consequences of its own negligence. The language employed by defendant in this connection must be strictly construed and most strongly against it. In the case of *Howard* v. *Handler Bros. & Winell,* (279 App. Div. 72, 75-76, affd. 303 N. Y. 990), the court stated : " The law does not look with favor upon attempts to avoid liability for one's own fault, and although it is permissible in instances to contract one's self out of liability for negligence, such a result is not to be countenanced unless it is absolutely clear that such was the understanding. *It must be precisely provided that limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility.*" (Emphasis supplied.) (See, also, *Boll* v. *Sharp & Dohme,* 281 App. Div. 568.)

The foregoing principle, in its application to the construction of bank rules, finds apt expression in the case of *Elder* v. *Franklin Nat. Bank* (25 Misc. 716, 719). There an action had been brought by a depositor against the bank for failure to comply with a stop payment order. The defense was predicated on a provision in the passbook which read a follows : " It is further agreed that the bank shall not be responsible for the execution of an order to stop payment of a check previously drawn; that the bank will endeavor to execute such orders, but that no liability shall be created by failure so to do, and that no rule, usage or custom shall be construed to create such liability." The Appellate Term, First Department, held that the agreement was to be construed so as to afford immunity from liability to defendant only " *where the bank has exercised ordinary care in that regard* " and made the following pertinent observation:

'' The courts are not prone to construe instruments in such a way as to support a waiver of liability for negligence. *Appleby* v. *Erie County Savings Bank,* 62 N. Y. 12; *Allen* v. *Williamsburgh Savings Bank,* 69 id. 314; *Mynard* v. *Syracuse, etc., R.R. Co.,* 71 id. 180. The first two cases above cited bear upon the liability of a savings bank for the payment of money to the wrong person. In the first case the by-law of the bank read : ' Although the bank will endeavor to prevent fraud upon its depositors, yet all payments to persons producing the passbooks issued by the bank shall be valid payment to discharge the bank .' In commenting upon the rule, Church, Ch. J., giving the opinion of the court, says (p. 17) : ' But these rules do not dispense with the exercise of ordinary care on the part of the officers of the bank. If, by a regulation designed to prevent fraud upon depositors, which by the rules the bank promised to '' endeavor '' to do, a fact or circumstance is brought to the knowledge of the officers, which is calculated to, and ought to excite the suspicion and inquiry of an ordinarily careful person, it is clearly the duty of the officers to institute such inquiry, and a failure to do so is negligence for which the bank would be liable, and such, I understand, is the doctrine of the cases cited by the defendant. The officers of these institutions are held to the exercise of reasonable care and diligence.' The second case above cited is substantially to the same effect.'' (See, also, *Ficken* v. *Emigrant's Ind. Sav. Bank,* 33 Misc. 92.)

Upon the trial of the instant case there was no showing by defendant that it used due care to avoid premature payment of the check. Moreover, even if plaintiff had assented to the '' rule '' in question, it is difficult to conceive that such payment was not made without carelessness on the part of an officer or employee of the bank.

The judgment appealed from should be reversed, with $30 costs to plaintiff, and judgment directed for plaintiff as prayed for in the complaint with appropriate costs in the court below.

Pette and Di Giovanna, JJ., concur.

Judgment unanimously reversed, upon the law and facts, with $30 costs to plaintiff, and judgment directed for plaintiff as prayed for in the complaint, with appropriate costs in the court below.